IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
99 OCT -6 PM 2:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

STEPHEN P. FAHY, )
 )
    Plaintiff, )
 )
v. ) CIVIL ACTION NO. 98-JEO-2230-S
 )
BUSINESS VENTURES, INC. and )
JAMES PERKINS, JR. )
 )
    Defendants. )

ENTERED
OCT - 6 1999

## MEMORANDUM OPINION

This matter is before the court on the motion to dismiss (doc. 27)[1] filed by defendant James Perkins, Jr. ("Perkins") and the motion for summary judgment (doc. 26) filed by defendant Business Ventures, Inc. ("Business Ventures") and Perkins. Upon due consideration, both motions are due to be denied.

## I. BACKGROUND

### A. Procedural Matters

Plaintiff Stephen P. Fahy ("Fahy") initially filed a complaint, asserting that Business Ventures willfully failed to pay overtime wages for which he was entitled to under the Fair Labor Standards Act of 1938 ("FLSA"). 29 U.S.C. §§ 201, *et seq.* According to the complaint, Business Ventures is an employer and business enterprise located in this district involved in interstate commerce, as that term is defined by the FLSA. *See* 29 U.S.C. § 203. It also alleges Fahy was formerly employed by Business Ventures as a hourly employee from about August 27, 1995, until

---

[1] References herein to "doc. ___" are to the document number assigned by the Clerk of the Court, located in the lower right hand corner of the pleading.

1997. Additionally, the complaint alleges that Fahy is entitled to compensation because Business Ventures willfully misclassified him as exempt from the Act.

Fahy filed a motion to amend the complaint which was granted without objection. (Doc. 11 & 12). In the amended complaint, he alleges that Perkins was the President, Chief Operating Officer, and alter ego of Business Ventures and, therefore, Perkins is jointly liable for the claims asserted against Business Ventures. Specifically, Fahy states:

> James Perkins, Jr. was the president and chief operating officer of Business Ventures, Inc. On information and belief, Perkins owns and completely controls all aspects of Business Ventures, and is the alter ego of Business Ventures. Consequently, Perkins is an employer within the meaning of the FLSA, and is jointly liable with Business Ventures for all of the claims asserted in the original Complaint and this amendment.

(Doc. 13).

Business Ventures and Perkins filed a motion for summary judgment (doc. 26) and a brief in support of the motion (doc. 28). They argue that FLSA does not apply because (1) Business Ventures does not produce goods as defined by the applicable statute, (2) Fahy was a supervisory and management employee exempted by the Act, (3) the work done by Business Ventures and Fahy on the applicable service contracts is not subject to the Act, (4) there is no evidence to support the claim that Perkins owns and controls all aspects of Business Ventures, and (5) Perkins has not been served as required under *Fed. R. Civ. P.* 4. (Doc. 28).

Perkins also filed a motion to dismiss (doc. 27). Therein he relies upon the arguments and authorities cited in the brief supporting Business Ventures' motion for summary judgment.

### B. The Facts

Business Ventures was an Alabama corporation doing business in the area of computer

software design, software development, computer programing, technology related programing, and technical writing, staffing and training. (Perkins, p. 15).[2] Perkins is the only corporate officer and the sole shareholder. (Perkins, p. 14). Fahy worked for Business Ventures from April 1995 to December 1997. (Fahy, p. 10).[3] He was a project manager when he started. (Perkins, p. 52, exhibit 2). He was responsible for overseeing various projects that involved contact with clients and employees, as well as promoting new business. His contract provided that he would be paid $48,000 a year as salary. *Id.*

Approximately in August of 1995, Fahy was assigned the responsibility of staffing for the contract Business Ventures had with Alabama Power Company. He agreed to work the assignment. (Perkins, pp. 67, 82-83). He provided technical services, technical writing, computer programming, and activities management to Alabama Power under the contract. (Perkins, pp. 67-68). When he commenced working on the contract, Fahy no longer supervised other employees. Instead, he worked alone on the project, under the general direction of Crystal Collins, a Vice President of the Business Computer Professionals Division at Business Ventures. (Fahy, pp. 26-28).

After Fahy began working at Alabama Power Company, he reported to Collins regarding his work. He told Collins he would be willing to work additional hours beyond the forty hours per week he was doing if Business Ventures would change him to an hourly employee. Fahy told Collins that Alabama Power was willing to pay for more than forty hours per week. (Fahy, pp. 38-39). Collins informed him his status was changed. (Fahy, pp. 40, 42).

---

[2] References to "Perkins, p. ___" are to Perkins' deposition and the attached exhibits, which are found at tab 2 of document 33.

[3] References to "Fahy, p. ___" are to Fahy's deposition and the attached exhibits, which are found at tab 1 of document 33.

On August 22, 1995, Collins, issued a memorandum stating that salaried employees working on contract assignments would "no longer [be] classified as Full-time, Salary employees. The new classification is Full-time hourly." (Perkins, exhibit 6). The memo further provided, hourly employees would be paid only their regular hourly rate for overtime hours. (*Id.*).[4] Collins issued another memorandum on August 31, 1995, concerning Fahy. It stated that the August 22 memorandum applied to Fahy. (Perkins, exhibit 7).[5] Collins issued another memorandum on September 1, 1995, stating Fahy would only be paid overtime for "billable projects, *i.e.* APCo [Alabama Power Company]. Overtime will only be paid when a project specifies overtime payment." (Fahy, def. exhibit 7). Fahy's pay was changed on Business Ventures' payroll records. Until his work on the Alabama Power contract ceased in August 1997, Fahy's pay was calculated on an hourly rate. (Perkins, pp. 100, 103). He completed and submitted time sheets while working on the Alabama Power contract. He was not paid time and a half for the weeks in which he worked in excess of forty (40) hours.

After Fahy was reassigned from the Alabama Power contract, he returned to a management position at Business Ventures. (Fahy, pp. 42, 43). Shortly thereafter, Collins left the company. (Fahy, p. 57). A few months later, on December 12, 1997, Fahy was "laid off." (Fahy, exhibit 19).

## II. STANDARDS OF REVIEW

### A. Motion to Dismiss

A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proven consistent

---

[4] The defendant asserts that this memorandum applied to Business Ventures personnel working on a contract with BellSouth. (Perkins, p. 78-79, exhibit 6).

[5] Perkins asserts that this memo was in error and did not apply to Fahy. (Perkins, p. 80).

> with the allegations in the complaint. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984); *see also Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986) ("[W]e may not...[dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief.") (citation omitted). The court will accept as true all well-pleaded factual allegations and will view them in a light most favorable to the nonmoving party. *Hishon*, 467 U.S. at 73, 104 S. Ct. 2229. Furthermore, the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 703 (11th Cir. 1985).

*Williams v. City of Montgomery*, 21 F. Supp. 2d 1360, 1362 (M.D. Ala. 1998). *Accord Kobatake v. E.I. DuPont De Nemours and Co.*, 162 F.3d 619, 623 n.2 (11th Cir. 1998). *See also Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir.)("A motion to dismiss is only granted when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"), *cert. denied*, ___ U.S. ___, 119 S. Ct. 509, 142 L. Ed. 2d 422 (1998).

### B. Motion for Summary Judgment

Summary judgment is to be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(c); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that indeed there is a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress*

*& Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).

The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex,* 477 U.S. at 322-23; *see* Fed. R. Civ. P. 56(a) and (b). Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. The nonmoving party need not present evidence in a form necessary for admission at trial; however, the movant may not merely rest on the pleadings. *Id.*

After a motion has been responded to, the court must grant summary judgment if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322.

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A judge's guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether

it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 259; *see Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983). *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 643 (11th Cir. 1997). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matusushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson,* 477 U.S. at 254; *Cottle v. Storer Communication, Inc.,* 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts is the function of the jury, and therefore, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Allen*, 121 F.3d at 643.

### III. DISCUSSION

#### A. Service Contracts Are Not Goods Covered Under the FLSA

The FLSA requires employers that are sufficiently involved in interstate commerce to pay overtime to employees who work more than forty hours per week and are not specifically exempted.

7

29 U.S.C. § 207(a)(1). The defendants first assert the pending motions are due to be granted because the contract services provided by Business Ventures are not covered under the FLSA. Specifically, they assert the plaintiff's work on the Alabama Power contract is not covered by the Act. Fahy responds by stating the Act is broad in scope and "obviously covered all employees of Mr. Perkins and Business Ventures" under the statutory language, which includes all persons or entities engaged in commerce or in the production of goods for commerce. (Doc. 30, p. 3).

> The FLSA provides:
>
> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, *or is employed in an enterprise engaged in commerce* or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1)(emphasis added). This language is consistent with the FLSA minimum wage provision. *See* 29 U.S.C. § 206(a).[6] The Act further provides:

> "Enterprise engaged in commerce or in the production of goods for commerce" means an enterprise that—
>
> > (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
> >
> > (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated);

---

[6] 29 U.S.C. § 206 provides:

Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates. . . .

8

. . . .

29 U.S.C. § 203(s). "'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). "'Goods' means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof." 29 U.S.C. § 203(i).

The defendants do not dispute the application of the FLSA premised on the fact that Business Ventures is an enterprise engaged in commerce. The record demonstrates that Fahy and the company were providing services on contracts involving large companies engaged in interstate commerce, particularly BellSouth and Alabama Power Company. Thus, the motions are due to be denied on this ground. Additionally, Fahy's work on the Alabama Power Company contract would satisfy the provision in § 207(a)(1) which provides that the Act applies to "employees who in any workweek is engaged in commerce. . . ." (*Id*).

**B. Supervisory and Management Exemption**

The defendants next assert that Fahy is not within the ambit of the Act because he was "clearly a supervisory and management employee to whom the [A]ct does not apply." (Doc. 28, p. 3). *See* 29 U.S.C. § 213(a)(1).[7] Section 213(a)(1) exempts employees serving in a "bona fide

---

[7] Section 213 provides, in pertinent part:

(a) Minimum wage and maximum hour requirements

The provisions of section 206 (except subsection (d) in the case of paragraph (1) of this subsection) and

9

executive, administrative, or professional capacity." *Id.* These terms are further defined by the applicable regulations. *See* 29 C.F.R. Part 541. The defendants do not specifically delineate which exemption applies in Fahy's situation.

In examining this issue, the inquiry must be made on a "workweek" basis. 29 C.F.R. §§ 778.103-105. As pointed out by Fahy, an employee may be covered during a portion of his employment period and exempted during other times. Thus, the pertinent inquiry is whether Fahy was serving in an executive, administrative, or professional capacity during the pertinent time. The Tenth Circuit Court of Appeals in *Bohn v. Park City Group, Inc.*, 94 F.3d 1457 (10th Cir. 1996), has stated:

> It is the employer's burden to prove that a plaintiff falls within the professional exemption, *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97, 94 S. Ct. 2223, 2229, 41 L. Ed. 2d 1 (1974), and the exemption is construed narrowly against the employer who seeks to assert it. *See Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S. Ct. 453, 456, 4 L. Ed. 2d 393 (1960). "[T]he inquiry into exempt status under [§ 213(a)(1)] remains intensely fact bound and case specific." *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1226 (5th Cir. 1990).

94 F.3d at 1461.

As noted above, Fahy was hired as a salaried employee in February 1995. He asserts that his status changed approximately in August of 1995 when he commenced work on the Alabama

---

section 207 of this title shall not apply with respect to--

(1) any employee employed in a bona fide executive, administrative, or professional capacity (including any employee employed in the capacity of academic administrative personnel or teacher in elementary or secondary schools), or in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary, subject to the provisions of subchapter II of chapter 5 of Title 5, except that an employee of a retail or service establishment shall not be excluded from the definition of employee employed in a bona fide executive or administrative capacity because of the number of hours in his workweek which he devotes to activities not directly or closely related to the performance of executive or administrative activities, if less than 40 per centum of his hours worked in the workweek are devoted to such activities);

. . .

10

Power Company contract. The pertinent period is from August 1995 until August 1997.

### 1. Executive

Construing Perkins' motions liberally, it is arguable that he is asserting an exemption under the *"bona fide executive"* provisions of the Act. To fit within that exemption, the defendants must show Perkins meets the following definition:

> The term *"employee employed in a bona fide executive * * * capacity"* in section 13(a)(1) of the Act shall mean any employee:
>
> (a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department of subdivision thereof; and
>
> (b) Who customarily and regularly directs the work of two or more other employees therein; and
>
> (c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and
>
> (d) Who customarily and regularly exercises discretionary powers; and
>
> (e) Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment who does not devote as much as 40 percent, of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section: Provided, That this paragraph shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment, or who owns at least a 20-percent interest in the enterprise in which he is employed; and
>
> (f) Who is compensated for his services on a salary basis at a rate of not less than $155 per week (or $130 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities: Provided, That an employee who is compensated on a salary basis at a rate of not less than $250 per week (or $200 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands or American Samoa), exclusive of board, lodging, or other facilities, and whose

primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all the requirements of this section.

29 C.F.R. § 541.1 (emphasis in original).

The defendants have not satisfied the court that Fahy was a *"bona fide executive"* because the record demonstrates: (1) during the pertinent period, he was paid on a hourly basis, (2) defendants' records show that individuals such as Fahy were classified as "Full-time Hourly" employees, and (3) during the pertinent period, he did not direct the work of two or more persons. Additionally, there are factual disputes as to what duties and responsibilities Fahy had during the pertinent period.

### 2. Administrative

Although it is unclear if the defendants are asserting that Fahy is exempt under the *"bona fide administrative"* provisions of the Act, to exclude him from coverage, they would have to satisfy the following definition:

> The term *employee employed in a bona fide * * * administrative * * * capacity* in section 13(a)(1) of the Act shall mean any employee:
>
> (a) Whose primary duty consists of either:
>
> (1) The performance of office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers, or
>
> (2) The performance of functions in the administration of a school system, or educational establishment or institution, or of a department or subdivision thereof, in work directly related to the academic instruction or training carried on therein; and
>
> (b) Who customarily and regularly exercises discretion and independent judgment; and

12

> (c)(1) Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive or administrative capacity (as such terms are defined in the regulations of this subpart), or
>
> (2) Who performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge, or
>
> (3) Who executes under only general supervision special assignments and tasks; and
>
> (d) Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment who does not devote as much as 40 percent, of his hours worked in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (c) of this section; and
>
> (e)(1) Who is compensated for his services on a salary or fee basis at a rate of not less than $155 per week ($130 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities, or
>
> . . . .

29 U.S.C. § 541.2 (emphasis in original). As the defendants fail to allege, much less demonstrate how Fahy fits this category, the court finds that he is not exempt under this definition. Further, the evidence before the court does not support a claim that he is exempt.

### 3. Professional

Lastly, although the defendants do not allege how Fahy fits within the category of a "*bona fide professional*" exemption under the Act, the court notes that they would have to show that he met the following definition:

> The term *employee employed in a bona fide * * * professional capacity* in section 13(a)(1) of the act shall mean any employee:
>
> (a) Whose primary duty consists of the performance of:

13

(1) Work requiring knowledge of an advance type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental, manual, or physical processes, or

(2) Work that is original and creative in character in a recognized field of artistic endeavor (as opposed to work which can be produced by a person endowed with general manual or intellectual ability and training), and the result of which depends primarily on the invention, imagination, or talent of the employee, or

(3) Teaching, tutoring, instructing, or lecturing in the activity of imparting knowledge and who is employed and engaged in this activity as a teacher in the school system or educational establishment or institution by which he is employed, or

(4) Work that requires theoretical and practical application of highly-specialized knowledge in computer systems analysis, programming, and software engineering, and who is employed and engaged in these activities as a computer systems analyst, computer programmer, software engineer, or other similarly skilled worker in the computer software field, as provided in § 541.303; and

(b) Whose work requires the consistent exercise of discretion and judgment in its performance; and

(c) Whose work is predominantly intellectual and varied in character (as opposed to routine mental, manual, mechanical, or physical work) and is of such character that the output produced or the result accomplished cannot be standardized in relation to a given period of time; and

(d) Who does not devote more than 20 percent of his hours worked in the workweek to activities which are not an essential part of and necessarily incident to the work described in paragraphs (a) through (c) of this section; and

(e) Who is compensated for services on a salary or fee basis at a rate of not less than $170 per week ($150 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities: Provided, That this paragraph shall not apply in the case of an employee who is the holder of a valid license or certificate permitting the practice of law or medicine or any of their branches and who is actually engaged in the practice thereof, nor in the case of an employee who is the holder of the requisite academic degree for the general practice of medicine and is engaged in an internship or resident program pursuant to the practice of medicine or any of its

>branches, nor in the case of an employee employed and engaged as a teacher as provided in paragraph (a)(3) of this section: Provided further, That an employee who is compensated on a salary or fee basis at a rate of not less than $250 per week (or $200 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities, and whose primary duty consists of the performance either of work described in paragraph (a)(1), (3), or (4) of this section, which includes work requiring the consistent exercise of discretion and judgment, or of work requiring invention, imagination, or talent in a recognized field of artistic endeavor, shall be deemed to meet all of the requirements of this section: Provided further, That the salary or fee requirements of this paragraph shall not apply to an employee engaged in computer-related work within the scope of paragraph (a)(4) of this section and who is compensated on an hourly basis at a rate in excess of 6 ½ times the minimum wage provided by section 6 of the Act.

29 C.F.R. § 541.3. Again the court finds that the defendants have failed to allege, much less demonstrate, how Fahy is exempt from FLSA coverage. Accordingly, the motions are due to be denied.

### C. Service on Perkins

Perkins' motions to dismiss the amended complaint and for summary judgment are also premised on the failure of the plaintiff to serve him pursuant to Rule 4 of the *Federal Rules of Civil Procedure*. To begin, Fahy filed a motion to amend the complaint. (Doc. 11). It was granted without objection from the defendants. (Doc. 12). Fahy served a copy of the amended complaint on counsel for the defendants at the same time it was filed on November 14, 1998. (Doc. 13, p. 2). Counsel for the defendants used and attached a copy of the amended complaint to Fahy's May 28, 1999 deposition. The record also evidences the amended complaint was served on Perkins on or about July 14, 1999. (Doc. 31). Perkins filed an answer on August 4, 1999. (Doc. 32).

Rule 4 of the *Federal Rules of Civil Procedure* provides, in pertinent part:

> **Time Limit for Service**. If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court,

15

upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period. This subdivision does not apply to service in a foreign country pursuant to subdivision (f) or (j)(1).

*Fed. R. Civ. P.* 4(m). The Advisory Committee Comments to the 1993 amendments to Rule 4 provide the following concerning subsection (m):

. . . .

The new subdivision explicitly provides that the court shall allow additional time if there is good cause for the plaintiff's failure to effect service in the prescribed 120 days, and authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown. Such relief formerly was afforded in some cases, partly in reliance on Rule 6(b). Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service. *E.g., Ditkof v. Owens-Illinois, Inc.*, 114 F.R.D. 104 (E.D. Mich. 1987). A specific instance of good cause is set forth in paragraph (3) of this rule, which provides for extensions if necessary to correct oversights in compliance with the requirements of multiple service in actions against the United States or its officers, agencies, and corporations. The district court should also take care to protect pro se plaintiffs from consequences of confusion or delay attending the resolution of an *in forma pauperis* petition. *Robinson v. America's Best Contacts & Eyeglasses*, 876 F.2d 596 (7th Cir. 1989).

Advisory Committee Notes to the 1993 Amendments to Rule 4 of the *Fed. R. Civ. P.*

Premised on Fahy's counsel's "apparently mistaken impression that opposing counsel had agreed to accept service for Mr. Perkins," the absence of any evidence of prejudice to Perkins, and that the statute of limitations might bar the refiling of a portion of Fahy's claims,[8] the court finds that the motions are due to be denied.

---

[8] The statute of limitations for violations concerning unpaid overtime compensation under FLSA is two years, except in cases of willful violations which must be commenced within three years of accrual. 29 U.S.C. § 255(a).

16

### D. Alter Ego

The amended complaint, adding Perkins as a defendant, provides:

> James Perkins, Jr. was the president and chief operating officer of Business Ventures, Inc. On information and belief, Perkins owns and completely controls all aspects of Business Ventures, and is the alter ego of Business Ventures. Consequently, Perkins is an employer within the meaning of the FLSA, and is jointly liable with Business Ventures for all of the claims asserted in the original Complaint and this amendment.

Perkins asserts that he is not an employer under the Act and, therefore, cannot be held liable. He also asserts "there is no evidence to support a claim that he owns and controls all aspects of Business Ventures, and is thus an employer under the [A]ct." (Doc. 28, ¶ 10).

The Act defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization." 29 U.S.C. § 203(d). "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986), *citing Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983). "The Supreme Court has termed the Act's employer definition "expansive" and has held that "managerial responsibilities" and "substantial control of the terms and conditions of the [employer's] work" create statutory employer status. *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971-72 (5th Cir. 1984), *cert. denied*, 471 U.S. 1124 (1985), *citing Falk v. Brennan*, 414 U.S. 190, 195, 94 S. Ct. 427, 431, 38 L. Ed. 2d 406 (1973). *See also Herman v. RSR Security Services Ltd.*, 172 F.3d 132, 139 (2nd Cir. 1999)("The Supreme Court has emphasized the

"expansiveness" of the FLSA's definition of employer."). In determining whether an individual is an employer under FLSA, the Fifth Circuit has stated:

> Our determination of Alberding's status is not circumscribed by formalistic labels or common-law notions of the employment relationship, *Bartels v. Birmingham*, 332 U.S. 126, 67 S. Ct. 1547, 91 L. Ed. 1947 (1947); *Mednick v. Albert Enterprises, Inc.*, 508 F.2d 297 (5th Cir. 1975). Instead, our analysis must focus upon the totality of the circumstances, underscoring the economic realities of the irrigation workers' employment. *Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748 (1978); *Hodgson v. Griffin and Brand of McAllen, Inc. See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 67 S. Ct. 1473, 91 L. Ed. 1772 (1947). In so doing, we adhere to the firmly-established guidon that the FLSA must be liberally construed to effectuate Congress' remedial intent. *Donovan v. Janitorial Services, Inc.*, 672 F.2d 528 (5th Cir. 1982); *Donovan v. I-20 Motels, Inc.*, 664 F.2d 957 (5th Cir. 1981).
>
> . . . .
>
> Contrary to appellant's suggestion, neither the Act nor jurisprudence designates stock ownership in a corporate employer as the *sine qua non* of employer status where other forms of control of the employment relationship have been proven. No one factor is dispositive; rather, it is incumbent upon the courts to transcend traditional concepts of the employer-employee relationship and assess the economic realities presented by the facts of each case. *See Goldberg v. Whitaker House Cooperative*, 366 U.S. 28, 81 S. Ct. 933, 6 L. Ed. 2d 100 (1961).

*Donovan v. Sabine Irrigation Co.*, 695 F.2d 190, 194-95 (5th Cir.), *cert. denied*, 463 U.S. 1207 (1983), *abrogation on other grounds recognized by Reich v. Bay, Inc.*, 23 F.3d 110 (5th Cir. 1994). *Accord RSR Security Services Ltd.*, 172 F.3d at 139 (setting forth considerations under the "economic realities test").

Additionally, "[w]hen the person who owns or controls the corporation has abused this privilege, however, by using the corporate form to defeat justice, perpetuate fraud, promote crime, evade contractual or tort responsibility, or for any other reason which in equity or good conscience would justify the disregard of the corporate entity, the court may pierce the corporate veil in order

18

to correct the abuse." *United States v. Fidelity Capital Corp.*, 920 F.2d 827, 836-37 (11th Cir. 1991). "The mere fact that a person owns and controls a corporation will not justify a finding of abuse of the corporate entity, even though that person may have used the corporation to promote his own ends." *Id.*

The record is clear that Perkins was a corporate officer and sole shareholder. (Perkins, p. 14). Perkins asserted at his deposition, "During a long period between '92 and '96 I was really an absent owner. And a lot of the decisions that were made were made by staff and not by me." (Perkins, p. 28). The record reveals, however, that he was involved in the decision making process concerning Fahy's work and payment while at Alabama Power Company. (Perkins, pp. 126-129). He was also the person that asked Fahy to come back and work in Business Ventures' office. (Fahy, p. 25). As the facts are in dispute, and because this is a fact intensive inquiry, the motions are due to be denied.

## IV. CONCLUSION

Premised on the foregoing, Perkins' motion to dismiss the complaint is due to be denied, and the motion for summary judgment by Business Ventures and Perkins is also due to be denied. An order consistent with the findings and conclusions reflected in this memorandum opinion will be entered contemporaneously herewith.

**DONE** this the ____ day of October, 1999.

JOHN E. OTT
UNITED STATES MAGISTRATE JUDGE